Lady Lincoln Lodge v. Faist.

---

**LADY LINCOLN LODGE et al.**

*v.*

**WILLIAM G. FAIST et al.**

A subordinate lodge of an order, the aim of which is "to unite fraternally all acceptable persons," may appropriate, for the support of a lodge to be organized under the same jurisdiction, part of a fund raised among its members by contribution, out of which its general expenses and sick benefits are payable, if such appropriation is not prohibited by its by-laws or the general laws of the order.

*Mr. William D. Daly* and *Mr. J. Frank Fort*, for the com-
plainants.

*Mr. Samuel Kalisch*, for the defendants.

GREEN, V. C.

Lady Lincoln Lodge, No. 702, Knights and Ladies of Honor,
Hoboken, New Jersey, is a voluntary association. It is organ-
ized under the jurisdiction of the Grand Lodge of the State of
New Jersey. The order of fraternal societies known as the
Knights and Ladies of Honor has its fountain-head in a Supreme
Lodge which was incorporated under the laws of Kentucky,
April 1st, 1878, a supplement to the act of incorporation being
approved December 14th, 1881; also by act of incorporation
under the laws of Missouri, in 1885, and under the laws of
Indiana, in 1891.

The objects of the corporation, as stated in section 2 of its
articles of association filed in the department of the State of
Indiana, is to unite fraternally all acceptable white persons,
male and female; to give all possible moral and material aid in
its power to its members and those depending on its members
by holding moral, instructive and scientific lectures, by en-
couraging each other in business and by assisting each other to
obtain employment; to care for the sick and distressed and to
promote benevolence and charity by establishing a relief fund
by contributions from members of the Order of Knights and
Ladies of Honor, from which, upon satisfactory evidence of the
death of a member of said order who is a contributor to said
fund at the time of his or her death, and who has complied with
its lawful requirements, a sum not exceeding $5,000 shall be
paid to such member or members of his or her family, person or
persons dependent on or related to him or her, as he or she may
have directed; to provide for creating a fund for the relief of
sick and distressed members, and to ameliorate the condition of
humanity in every possible manner.

The constitution provides for the establishment of Grand
Lodges in the different states, and for the organization of subor-

dinate lodges under the jurisdiction of the respective Grand Lodges.

What is known as the relief fund is made up of contributions of the members to the lodges, and is exclusively within the management and control of the Supreme Lodge, and is of the nature of a classified insurance, to which the appointee of the member is entitled on the death of the member.

There is another fund, which, as I understand the constitution and laws of the order, is within the control and management of the respective lodges, being raised in each lodge by contributions from its members or donations made thereto. This fund is called the "general fund" of the particular lodge, and from it are paid the general expenses of the lodge and benefits which the lodge may by its by-laws prescribe to be paid to members disabled by sickness or other disability from following their usual business or occupation.

Over this general fund of each lodge no one has any authority or power of disposition except the particular lodge to which it belongs, and such lodge is undoubtedly controlled in such disposition by any restrictions which may be prescribed in the by-laws of such lodge, and generally that it should be for some purpose tending to carry out the general objects of the order, for it must be assumed that every contribution made by a member to the funds of the lodge has been made on the faith that it will be appropriated in no other way. *Abels* v. *McKeen, 3 C. E. Gr. 462.*

On January 13th, 1892, Lady Lincoln Lodge, at a regular meeting (five members, by the by-laws, being a quorum for business), by a vote of seventy-six in the affirmative and twenty-six in the negative, adopted a motion "that $1,500 of the general fund be turned over to our trustees, H. Roehm, H. Siemer and William G. Faist, for the purpose of supporting and organizing a new lodge of Knights and Ladies of Honor," and subsequently a motion to reconsider that vote was lost by a vote of seventy-six to twenty-one, and on the same evening the officers of said Lady Lincoln Lodge drew two warrants against the fund.

of the lodge to the order of said trustees, one for $1,000 and the other for $500, and delivered the same to the said trustees.

Subsequently, certain members of Lady Lincoln Lodge took their withdrawal cards and organized a new lodge in Hoboken under the name of the De Forest P. Lozier Lodge, No. ——, of the Knights and Ladies of Honor, it being a lodge of the same order and under the jurisdiction of the Grand Lodge of New Jersey, and the trustees above named, on the 24th of February, 1892, paid over the $1,500 to the secretary pro tem. of that lodge for the purpose of organizing and supporting it, taking a receipt specifying that as the object of such donation.

Some eighty-six of the three hundred and eighteen members of the Lady Lincoln Lodge withdrew from it and organized, or became members of, the De Forest P. Lozier Lodge.

After this steps were taken in the Lady Lincoln Lodge to annul its former action, and notice was given to Roehm, Siemer and Faist to return the money, but they claim that such notice was not served upon them until after they had paid it over to the representatives of the new lodge. Thereupon this suit was brought against Roehm, Siemer and Faist, and the De Forest P. Lozier Lodge, to recover the amount.

Before paying the $1,500 over to the new lodge there was in the bank account of the Lady Lincoln Lodge $3,200.

On the principle that trust funds, when they have been diverted from the purposes of the trust, may be followed and recovered, so long as they may be identified, I think this action may be maintained if there has in fact been an improper disposition of the funds of Lady Lincoln Lodge. The money is still intact, and there is no dispute but that $1,500 of the general fund of the new lodge represents the amount of the donation which was made to it by the old lodge through Messrs. Roehm, Siemer and Faist.

This raises the question whether there has really been any improper diversion of the general fund of Lady Lincoln Lodge. In the first place, it has been appropriated for the organization and maintenance of another lodge of the same order, organized under the authority of the original charters and general constitu-

Lady Lincoln Lodge v. Faist.

tion and laws of the Supreme Lodge, and under the jurisdiction of the Grand Lodge of the state. It is therefore appropriated to carrying out and enforcing the general objects of the order. This, however, is not conclusive if it is an expenditure prohibited by the general laws of the order or the by-laws of the lodge. The general laws only require that part of this fund be devoted to the payment of the sick benefits to which members may be entitled. The by-laws of the Lady Lincoln Lodge provide (art. 3, par. 2) that the quarterly dues are fixed at $1.50 per quarter, of which the lodge physician is to receive $50 per quarter for the free treatment of the members. Art 4, par. 1. Members not in arrears for dues, fines &c., and being members of the lodge for six months previous, who shall become sick, shall receive the weekly sum of $5 per week; should, however, the funds of the lodge become less than $1,000, then the lodge shall say what weekly amount shall be paid. Par. 2. If a member should draw sick benefits for twenty-six weeks, then the lodge shall determine what further, if any, benefits shall be paid. Art. 7, par. 1. As to the funeral of a deceased member —the lodge shall furnish two coaches, which shall be paid from the lodge funds; outside of Hoboken one coach will be furnished, and a suitable floral tribute by the lodge. Art. 10, par. 1. The two secretaries shall receive $100 per year for their work, payable quarterly.

These are the only provisions of the by-laws which relate to the expenditure of the lodge funds. There is no provision of the by-laws that the general fund of the lodge shall be appropriated to these purposes and none other. The provisions are simply that these payments are to be made, without reference to the fund from which the money is to be drawn, with the exception of the salaries of the lodge physicians. If the by-laws had provided that the general fund, which I understand to include the funds of the lodge other than those which the lodge must contribute to the Grand and Supreme Lodges, should not be appropriated to other than certain specified purposes, the case would then come within the rule laid down by the chancellor in the case of *Abels* v. *McKeen.* In that case the fund had been

contributed for a specific purpose, and the purpose having been accomplished by the expenditure of a less amount than the sum raised, the court held that the trustees, in whose hands the money had been placed, had no right to expend it for any other than the specified purpose, and should repay the balance proportionately to the original contributors.

The by-laws, by pledging the lodge to certain payments, in effect charged those payments on its general fund as the only one to which it had recourse, but this action does not devote and appropriate all the general fund to such specified purposes, and prohibit its use for other objects.

If the general fund of Lady Lincoln Lodge had been so low that this donation seriously crippled the finances of the lodge, and rendered it unable to make the payments which were specifically charged upon the general fund, or if the money had been donated to an object not contemplated by the organization, such action would fall within the principle of the case referred to. But there is no contention that, after this withdrawal of $1,500, there was not a sufficient amount in the general fund to meet all payments for the purposes specified in the by-laws, and, as before shown, the appropriation was for the furtherance of the objects of the order.

I am therefore of opinion that it cannot be held that the resolution of Lady Lincoln Lodge contributing $1,500 to the organization and maintenance of the new lodge, was a diversion of the fund to an improper or unwarranted purpose, and will advise that the bill be dismissed.